# NEW YORK SUPERIOR COURT.

DAVID G. SCOTT, respondent agt. C. B. GUTHRIE and others, appellants.

An *assignment for the benefit of creditors*, made by insolvent copartners, which provides, first, for the payment of their copartnership debts to partnership creditors, and then provides for applying the property of one of the partners to pay his partner's debts, or for the payment of the individual debts of the assignors, *of unequal amounts*, although *void* as to the latter provision, is *not void as to the preferred partnership creditors*, and the latter have no right to set aside the assignment as void on its face, particularly as to partnership property. (*See this case*, *ante*, *p.* 481, *where a brief opinion of Judge* ROBERTSON *is given on this question.*)

*New York General Term, April,* 1863.

APPEAL by defendants from judgment at special term.

JOHN N. WHITING, *for appellants.*
CHARLES H. HUNT, *for respondent.*

By the court, ROBERTSON, Justice. Since this case was before me at special term, another case (*Morris* agt. *Atwell and others, June term,* 1862) has been brought before the general term, which involved the same questions as to the invalidity of an assignment by which the individual creditors of one of the assignors are made to partake *pro rata* with the individual creditors of the others, of their separate property. I then had occasion to examine the question, which was fully argued, and came to the conclusion that such an assignment was not invalid as to the partnership preferred creditors. That result was stated in the opinion of the court, then delivered by me, without assigning any elaborate reasons therefor. I had overlooked, until the present case came before us on this appeal, that the same question had been involved in it, owing, in a great measure, to my attention not having been called to the fact that the plaintiff was a partnership creditor; nor was the point raised in the present

case at special term, that such a party had no right to object to the assignment. It therefore seems to me to be not an unfitting occasion to state the reasons why I arrived at a different conclusion in the later case.

The plaintiff is a partnership creditor of Byerly & Allen, and is preferred in their assignment, which provides for applying the property of one of the partners to pay his partner's debts, which is clearly void under the decisions of *Collomb* agt. *Caldwell*, (16 *N. Y. R.*, 484 ;) *Wilson* agt. *Robertson*, (21 *N. Y. R.*, 587, *in the court of appeals*,) and *Gartside* agt. *Walton*, recently decided in this court. The question growing out of that, and governing this case, is, whether the whole instrument is void as regards this plaintiff. That will depend primarily upon another, whether such provision is avoided by one statutory provision, which annuls conveyances in trust for the grantor (2 *R. S.*, 135, § 1) as to all creditors ; or another one, which makes conveyances with intent to hinder, delay and defraud any person, void as to the person so hindered, &c. (2 *R. S.*, 137, § 1.) It must be determined, if avoided by the first, whether the whole instrument, or only the offending clause, is thereby rendered ineffectual, or if by the second, whether, as the only persons whom such clause apparently intends to defraud or hinder were individual creditors, the plaintiff can claim that by legal construction their right to repudiate the instrument produces such an injury to him as that the intentional giving of that right by it constitutes an intent to hinder or defraud him.

In the case of *Wilson* agt. *Robertson*, (*ubi sup.*,) where the assignment in controversy was of partnership property to pay certain creditors of one of the partners (Crocker) jointly with certain partnership creditors, the court said : " It may be seriously doubted whether the assignment should not be regarded as executed, and the trust made for the benefit of the assignors or one of them,

and thus void under the statute declaring all transfers, &c., made in trust for the use of the person making the same, void as against the creditors of such person. The assignment is made for the benefit of Crocker, as its purpose is to liquidate and discharge his individual debts. The transfer may therefore be said to be made in trust for the use of one of the assignors. This is the spirit of the transaction, if not its legal effect. Crocker is enabled to appropriate the partnership funds to relieve himself from liability." This reasoning applies more forcibly to a case where all the property of both parties is first applied to pay their partnership debts, and the same instrument is made use of to apply the residue to pay the individual debts of both parties promiscuously. No one could pretend that if the application had been actually so made without an instrument of assignment, it would be any evidence of an intent to defraud any one but individual creditors, or to appropriate property to the use of either partner, except so far as it went to pay individual creditors.

If, therefore, only the clause in regard to individual creditors be considered as appropriating property for the use of the grantors, unless it be also void as exhibiting an intent to hinder or defraud, which will be presently considered, the question arises whether that avoids the whole instrument. That objection is ably disposed of by Judge COMSTOCK, in *Curtis* agt. *Leavitt*, (15 *N. Y. R.*, 176,) in which the prior case of *Barney* agt. *Griffin*, (2 *N. Y. R.*, 305,) is commented on and disapproved of. He lays down the true rule as being that where a statute simply declares voidness, without in the strictest terms embracing the whole instrument, a particular provision may be inoperative and the others good. He argues that " trusts in personal estate for the use of the person who creates them are not illegal or criminal, unless made with fraudulent motives. In themselves they are innocent—they are

simply declared inoperative and void as to creditors."
He pointedly asks " whether it is a necessary construc-
tion of the statute, that valid trusts must fail because in
the same conveyance (instrument—qu?) there is an inno-
cent one, void (only) when the superior rights of credi-
tors are concerned ?" and unhesitatingly answers it in
the negative, urging as a reason, " that a single deed may
have a (one) conveyance, transfer or assignment upon a
valid trust, and another upon a void one." He adds :
" The terms used (in the statute) do not in inevitable
construction apply to the instrument ; they are satisfied
by applying them to the inoperative provision." He then
refers to the case of *Doe* agt. *Pitcher*, (6 *Taunt. R.*, 363,)
as · sustaining the same view upon a statute similarly
worded, and having a similar policy in view. In that
case a question arose in reference to a conveyance which
contained a clause creating a charitable use not in the
form prescribed by the statute, (9 *Geo. II, c.* 36, § 3,)
which annuls and avoids all " gifts, grants, conveyances,
appointments, assurances, transfers and settlements of
lands" for such purposes, when made in any other form
than thereby prescribed. Yet GIBBS, Ch. J., said : " I
cannot find in this any act which makes the entire deed
void." The same principle is also to be found in *Darling*
agt. *Rogers*, (22 *Wend. R.*, 483.) I therefore feel fully
satisfied that if the fourth clause in this instrument,
which alone created a trust for the grantor's use, be for
that reason only void, it does not avoid all the other pro-
visions in it.

But it is said that this fourth clause also contains evi-
dence of an intent to hinder, delay and defraud creditors
of the assignors thereby, and that the whole instrument
is by such fraudulent intent rendered void under the
other statute against fraudulent conveyances. (2 *R. S.*,
137, § 1.)

Of course the same reasoning in regard to the effect of

the invalidity of such clause upon the rest of the instrument, except the guilt of the motive, would be equally applicable. The language of the statute is perhaps a little less stringent, since it does not contain the words " deeds of gift," and it can hardly be said that an intent in regard to some creditors is necessarily an intent as regards all. The whole instrument cannot, therefore, be said to have been executed for the single purpose of defrauding individual creditors of the assignors. And as, by a new subsequent section of this same title, (2 *R. S.*, 137, § 4,) such intent is made a question of fact and not of law, there can be no legal assumption that the intent in fact to defraud one so pervaded the whole instrument as to become an intent to defraud all. Still, however, the cases which have rather blindly followed each other from *Hyslop* agt. *Clarke*, (14 *J. R.*, 458,) down to *Wakeman* agt. *Grover*, 4 *Paige's R.*, 23 ; *S. C.*, 11 *Wend. R.*, 187,) and *Goodrich* agt. *Downs*, (6 *Hill's R.*, 483,) in assuming rather than satisfactorily establishing that a fraudulent intent in one provision was fraud as to all, have left the principle in a condition only to be remedied by the court of last resort. No allusion is made in any of those cases to the peculiar language of the statute, or of that of which it is a paraphrase. Nor has any notice been taken of the entirely new provision making fraud a question of fact instead of one of law. But in the eager haste manifested to break up preferential assignments almost any defect has been laid hold of. *Barney* agt. *Griffin*, before cited, perhaps throws a little doubt on the doctrine.

Assuming, therefore, that the fraud manifest in the fourth clause avoids the whole instrument, the question arises whether the plaintiff can avail himself of that voidability. I have not found, nor am I aware of any case in which the question has been mooted ; not even in *Smith* agt. *Howard*, (20 *How.*, *P. R.*, 121,) as I shall show. Assignments to pay debts have generally been attacked

for provisions for the assignor's benefit on their face, or by extrinsic evidence of a fraudulent intent affecting the whole instrument, or for provision producing an injury generally extending to all the creditors, and most proceedings to set them aside have been taken by creditors, who were disregarded in the assignment; which may account for the question never having been raised as to who could take the objection that fraud in a particular provision shall overthrow the whole assignment. In the case of *Fiedler* agt. *Day*, decided in this court, (2 *Sandf. S. C. R.*, 594,) the preference of a fictitious debt in the assignment was held to show an intent by the entire instrument to defraud, and, in fact, its payment would have defrauded all the real creditors. But no case has yet gone so far as to hold that where the evidence of fraud appears only upon the face of the assignment, and it only tends to show a fraudulent intent in one provision, and to defraud only some creditors, or one class of them, that any other creditor can intervene and overthrow the whole assignment in consequence of that fraudulent design.

The words of the provision in question are, "Every conveyance, &c., of any interest in lands or in goods, &c., made with the intent to hinder, delay or defraud creditors or other persons of their lawful, &c., demands * * as against the persons so hindered, delayed and defrauded, shall be void." (2 *R. S.*, 137, § 1.) In three prior provisions in the same chapter, (*Id.* 135, § 1; 136, §§ 5 *and* 9,) conveyances and transfers having certain defects are declared to be void as against the creditors of the grantor or maker of them; the first, when made for the grantor's use; the second, when a sale of chattels takes place without a change of possession, and the third, when a mortgage is not filed. The change of language from all creditors to those only who are hindered, &c., is striking and significant. In those cases, of course, every fraudulent purpose evidenced by the acts designated of " being

for the grantor's use, retaining possession," or "omitting to file," must be aimed at all the creditors, in the case of an assignment which is left to evidence on its face or general evidence, it may be confined to only some.    The provision in question is a copy of one in the Revised Laws of 1861, (1 *R. L.*, 75, § 25,) which is again borrowed from the English statute of 13 *Eliz.*, *ch.* 5.    The words of that statute are that "Every feoffment, &c., of lands, &c., any chattels made for any intent before declared and expressed, shall be as against that person, &c., whose actions, suits, &c., are or might in anywise be disturbed, hindered, &c., utterly void."    The intent before declared was contained in the recital which states that "feoffments, &c.," have been contrived of malice, &c., to delay, &c., creditors or others their   *   *   lawful actions, &c.    It seems to me, therefore, very plain that the statute of Elizabeth only meant to give "that person" who might be hindered, &c., a right to assail the conveyance; and that our statute, condensing the language from the recital of that statute, so as to define the intent, and changing "that person" to "the persons," did not intend to vary the sense.    If that be so, only those whom there was evidence of an intent to hinder or defraud, as a question of fact under the subsequent sections of the same title, had a right to repudiate the assignment.    The framers of it probably never dreamt that, by any subtle of inference, it could be made to destroy a whole conveyance by an improper purpose in one of its provisions; the language not being stronger than that of 9 Geo. II., (*c.* 36,) referred to in *Doe* agt. *Pitcher*, (*ubi sup.*)

It is claimed, however, that although this may primarily be so, yet, that the power which the parties who were in the first place intended as matter of fact by the assignors to be prejudiced by the assignment, thereby acquired to interfere with it, necessarily made it an instrument of hindrance to or fraud upon all the creditors.    And, as a

party may be inferred to have intended the natural or legal consequences of his acts, that hindrance or injury becomes thereby intentional within the statute as to all the creditors. This very refined and artificial reasoning apparently met with some favor at the hands of a former eminent member of the court of appeals, and has been the ground work of a decision in one of the districts of the supreme court. In *Leitch* agt. *Hollister*, (4 *N. Y. R.*, 211,) GARDINER, J., after stating that an assignment may be avoided by any creditor not voluntarily a party to the trust, if he has not ratified it, says : " It must, when executed, bind all or none of the creditors of the assignor. Otherwise, the condition of one for whom a provision was made by a fraudulent trust, without his agency, would be worse than if he had been excluded altogether." This was, however, said in reference to an assignment to some creditors directly to secure their debts, without a disposition of the surplus to any one, and to sustain it in order to take the case out of the rules established in *Goodrich* agt. *Downs* (6 *Hill Rep.*, 458) and *Barney* agt. *Griffin*, (2 *N. Y. R.*, 365.) No explanation was given of the mode in which " his condition would be worse," and that consideration certainly was not necessary to render a mere mortgage of lands and chattels to secure some creditors, made directly to them, valid as against other creditors. It has been held that mere injury to a particular creditor did not make a sale fraudulent. (*Holbud* agt. *Andersen*, 5 *T. R.*, 235 ; *Peekstock* agt. *Lyster*, 3 *M. & S. R.*, 371.)

In the case of *Smith* agt. *Howard*, (20 *How. Pr. R.*, 121,) however, an assignment very similar to the one in question was held to be invalid as to all the creditors. It was placed solely upon the ground that " a creditor would be more effectually defrauded if his hands against his will could be tied, while other creditors were avoiding the assignment and securing the application of the assigned estate to the payment of their debts to the exclu-

sion of his." With all respect for the authority of the tribunal who made that decision, and the learned judge who delivered the opinion of the court, I cannot see that such creditor must necessarily be defrauded at all by such a result; he may be postponed, and other creditors originally intended to be placed last, may be preferred by operation of law, but the assignor could have accomplished the same result by preferring those whom he attempted to hinder or defraud, and postponing those whom he attempted to defer. If it could be proved to have been the actual intention of the assignor, in addition to any legally imputable motive to him, to have embarrassed his preferred creditors by so cunning a device as attempting to defraud some creditors, thus preferring them in fact, as a question of fact established under the 5th section, (*p.* 137,) it would then be a proper ground of objection to the whole instrument. But I do not see how it can well be said that the consequences of an operation of law in favor of one party can be said to defraud another. The words of the statute seem to be entirely lost sight of, which make the assignment void only as against the person injured, &c.; the prosecution of the artificial reasoning already alluded to, to its conclusions change them so as making it void as against all creditors, without, as I think, any warrant from reason or authority. It is certainly a great refinement of speech, to bring all the creditors of an assignor within the words and provisions of a statute which only employs the terms persons hindered or defrauded in any case where the intent was plainly only to defraud some creditors. It would certainly be a great anomaly for a preferred creditor to take advantage of an attempt to benefit him at the expense of others, with whom he had no interest in common, but to whose his was entirely antagonistical, and that, too, when the result would be not to produce a common benefit, but to deprive the party designed to be injured of all benefit.

It would be for a plaintiff to denounce an attempt by a strange third person to injure another for his benefit, and urge that as a reason for being permitted to deprive that other of his rights. And it would be difficult to lay down rules for the suicidal evidence admissible on his part as a party benefited, to enable him to establish his resurgent rights as a defrauded creditor.

I may remark, that the question is not merely as to the hardship on a creditor, by any construction, but the purport of a statute and the efficacy of its language. A different legislature may undoubtedly cure many evils, but if we are at liberty to divine its object, high authority has furnished us the means. In the case of *Pauncefoot* agt. *Blunt*, (*Lane* 44, 45,) cited in *Twyne's case*, (3 *Rep.*, 80,) it is said : " Note well this word (declare) in the act of 13 Eliz., by which the parliament expounded that this was the common law before." Lord MANSFIELD, in *Codozan* agt. *Kennett*, (*Cowp. R.*, 436,) says, " that the common law would have attained every end proposed by Stat. 13 Eliz., c. 5." I do not think any principle of the common law would have enabled a preferred creditor in any assignment to have set it aside, because the debtor had attempted to defraud another creditor in the application of the surplus after he was paid.

If what I assume to be the effect of the statute be inserted in the assignment in words as a condition or contingency, I do not see that it will furnish evidence of an intent to defraud the plaintiff. It would be simply in substance that the creditors now preferred were to continue to be preferred, unless the postponed creditors should elect and take steps to be preferred, in which case the former were to be postponed. The law permits a debtor to make preferences among his creditors as capriciously as he pleases, provided he distributes all his property among them. If he does that by an instrument to which, from what appears on its face alone, the law com-

municates a certain efficacy, it is immaterial by what name that is designated ; the debtor may prefer the circuitous mode, but that does not give some whom he has preferred a right to exclude all their fellow beneficiaries.

I am constrained, therefore, to think that under the statute as to fraudulent conveyances, the plaintiff has no right to set aside this assignment, particularly as to partnership property, in regard to which the individual creditors have no rights, and a provision for returning which to the assignor might have avoided the assignment, as was strongly intimated in *Collomb* agt. *Caldwell*, (*ubi sup.*)

I concur in the views of my brother MONELL, as to the other objections, believing the statute of 1860 to have been intended more to protect the *cestui que trust* in assignments than to obstruct the execution of them.

I therefore unite in thinking the judgment should be reversed, and a new trial had.